IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LARRY COCHRAN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. SAG-24-2082 |
| UNITED STATES OF AMERICA, *et al.*, | * | |
| Defendants. | * | |
| | *** | |

## MEMORANDUM OPINION

Self-represented Plaintiff Larry Cochran, formerly incarcerated at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"), filed the above-captioned civil Complaint "for over-detention, deprivation of liberty without due process, and cruel and unusual punishment" as well as intentional infliction of emotional distress. ECF No. 1. The Complaint names as Defendants the United States of America; Michael D. Carvajal, Director of the Bureau of Prisons ("BOP"); Christopher Gomez, Director of the Mid-Atlantic Regional Office; Director of the Designation and Sentencing Classification Center; the United States Attorney's Office; the United States Attorney for the District of Maryland; and the Warden of FCI-Cumberland. Plaintiff alleges he was held beyond his statutory release date when the BOP failed to timely apply his credits earned pursuant to the First Step Act of 2018 ("FSA") and promptly release him to prerelease custody.[1] *Id*. at 5-6. Plaintiff seeks one million dollars in damages. *Id*. at 6.

---

[1] Plaintiff previously filed a substantively similar Complaint which was dismissed for lack of subject matter jurisdiction due to Plaintiff's having failed to exhaust his administrative remedies under the Federal Tort Claims Act ("FTCA"). *Cochran v. Director of the Bureau of Prisons, et al.*, Civil Action No. CCB-22-2061 (D. Md.) at ECF Nos. 39-40 (Order dated January 29, 2024). In the instant Complaint, Plaintiff states that he has now exhausted his administrative remedies. ECF No. 1 at 2. Additionally, while he was still in custody, Plaintiff filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, making the same arguments and demanding immediate release. *Cochran v. Earwin*, Civil Action No. GLR-22-173 (D. Md. 2022). The

Defendants moved to dismiss the Complaint, or in the alternative, for summary judgment. ECF No. 17. Plaintiff responded to the Motion, and Defendants replied.[2] ECF Nos. 20-22. The Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6. (D. Md. 2025). For the reasons explained below, Defendants' Motion will be granted.

## Background

Plaintiff alleges that he was "unlawfully over-detained" at FCI-Cumberland for seven months. ECF No. 1 at 3. He alleges that he was approved for one year of community corrections pursuant to the FSA "in late December of 2021 and/or early January of 2022," with a transfer date of August 4, 2022. *Id*. Plaintiff states that under the FSA, he was entitled to immediate transfer to community corrections on January 19, 2022, when the Department of Justice issued directives

---

Petition was denied for to failure to exhaust administrative remedies and as moot. *Id*. at ECF Nos. 39-40.

[2] Because a referenced exhibit was missing from the Defendants' Memorandum, they were directed to file the missing exhibits within seven days and provide them to Plaintiff by certified mail. ECF Nos. 17-1, 25. Plaintiff was granted time to supplement his opposition response after receipt of the missing exhibits. ECF No. 25. When Defendants did not file the missing exhibits within the time provided, Plaintiff filed a motion styled "Motion to Deny Defendant(s) Motion to Dismiss/Summary Judgment Due to Government's Noncompliance and Failure to Comply with this Court's Discovery Order and Plaintiff's Request for Sanctions." ECF No. 26. Defendants then filed the missing exhibits and provided them to Plaintiff via FedEx overnight delivery. ECF No. 27. Nevertheless, Plaintiff supplemented his motion for sanctions, ECF No. 28, and filed an additional motion styled "Motion in Opposition to Defendants' Motion to Extend Time to Comply with this Court's May 14, 2025 Discovery Order." ECF No. 29. Plaintiff's Motions are denied. The Court did not issue a "discovery order." The Court merely directed Defendants to file documents which were, presumably, inadvertently omitted from their Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF No. 25. While Plaintiff takes issue with Defendants having used FedEx to provide him with the documents rather than certified mail, ECF No. 29, the Court does not. The documents were provided to Plaintiff most expeditiously and with sufficient confirmation. Nor does the Court find any reason to sanction Defendants for filing the documents a week past the deadline. Defendants' tardiness was nothing more than a simple oversight. Furthermore, the one-week delay did not prejudice Plaintiff in any way, as he was provided time to supplement his opposition response after receiving the missing documents, which he did. ECF No. 28.

to the BOP regarding the calculation of earned and applied FSA credits, because the guidance promulgated on that date made clear that Plaintiff had earned sufficient FSA credits that, if properly applied, would mandate his immediate transfer to community corrections. *Id*. at 6. Plaintiff states that he informed "his Unit Team Staff and Warden at FCI Cumberland, the BOP Mid-Atlantic Regional Office and Director, the BOP Designation & Sentencing Classification Center, the BOP director, and the U.S. Attorney for the District of Maryland, [and] the U.S. Attorney's Office" of his contention that the FSA required his immediate transfer based on the January 19, 2022, regulations, but that they failed to transfer him until July 22, 2022. *Id*. Plaintiff states that he also filed a Petition for Writ of Habeas Corpus demanding his immediate release and "sent several letters and his Section 2241 to all Defendant(s) as no one would accept the responsibility to properly assist [him]." *Id*. Plaintiff alleges that his constitutional rights were violated and that he was subjected to intentional infliction of emotional distress. *Id*. at 3, 5-6. Liberally construed, Plaintiff's Complaint alleges constitutional claims pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) as well as intentional infliction of emotional distress under the Federal Tort Claims Act ("FTCA").

Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment together with a Memorandum in Support and exhibits. ECF No. 17.[3] Defendants argue that the Complaint should be dismissed because 1) the Court lacks subject matter jurisdiction over any constitutional claims pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) because the United States has not waived sovereign immunity and because the claim is not a cognizable *Bivens* claim; 2) the Court lacks subject matter jurisdiction over the FTCA claims

---

[3] As referenced above, Defendants later filed additional exhibits which were missing from their initial filing; the additional exhibits will be considered as part of the Motion. ECF No. 27.

against the individual Defendants because they were acting in the scope of their employment; 3) Plaintiff's FTCA claim for intentional infliction of emotional distress fails because Plaintiff cannot show "outrageous conduct" as a matter of law. ECF No. 17-1 at 1-2.

## Standards of Review

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Fed. R. Civ. P. 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), aff'd, 85 F. App'x 960 (4th Cir. 2004). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted) (alteration in original); *see also Buchanan v. Consol. Stores Corp.*, 125 F. Supp. 2d 730, 736 (D. Md. 2001).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; accord *Clear Channel Outdoor, Inc. v. Mayor & City Council of Baltimore*, 22 F. Supp. 3d 519, 524 (D. Md. 2014). In a factual challenge, on the other hand, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Further, courts have an independent obligation to determine whether they have subject-matter jurisdiction to consider a case. *See Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th. Cir. 1998) (a federal court is required, *sua sponte*, to determine if a valid basis for its jurisdiction exists, "and to dismiss the action if no such ground appears"). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere

existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a). A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for a court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; a court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261. Because Defendants filed their motion as a motion to dismiss, or in the alternative, for summary judgment, Plaintiff was on notice that the Court could treat the motion as one for summary judgment and rule on that basis. After being advised of his right to respond to the Motion, Plaintiff filed an opposition

response, including exhibits. ECF Nos. 18, 20. Therefore, the Court will consider the Motion as one for summary judgment where appropriate.

## Discussion

**A. The First Step Act ("FSA")**

The FSA governs the calculation of federal prison sentences. Section 102(b) of the FSA, codified at 18 U.S.C. § 3624(b), allows federal inmates to earn additional good time credits. *See* P.L. 115-391, § 102(b)(1). The FSA, among other things, allows the BOP to award inmates a maximum of 54 days of good time credits per year of their imposed sentence rather than 54 days of credit per year of their sentence served. *See Pizarro v. White*, 2019 WL 1922437, at *1 (M.D. Pa. Apr. 30, 2019).

The FSA was enacted on December 21, 2018. *See* 18 U.S.C. § 3632. The Attorney General was charged with developing and releasing a Risk and Needs Assessment System ("the System"). *Id.* The System is for: (1) determining an inmate's risk of recidivism; (2) assessing an inmate's risk of violence or serious misconduct; (3) determining the type and amount of evidence-based recidivism reduction programming ("EBRRs") appropriate for each inmate; (4) periodically assessing an inmate's recidivism risk; (5) reassigning an inmate to appropriate EBRRs and productive activities ("PAs") as needed; (6) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; and (7) determining when the inmate is ready to transfer to pre-release custody or supervised release. *See id*. § 3632(a). Further, the System provides guidance on the "type, amount, and intensity of EBRR programs and PAs to be assigned to each inmate based on the inmate's specific criminogenic needs." *Kurti v. White*, No. 1:19-cv-2109, 2020 WL 2063871, at *4 (M.D. Pa. Apr. 29, 2020) (citing 18 U.S.C. § 3632(b)).

The FSA allows eligible inmates who successfully complete EBRRs or PAs to receive earned time credits ("ETCs") to be applied toward time in pre-release custody or supervised release. *See* 18 U.S.C. § 3632(d)(4)(A). To be eligible to earn ETCs, inmates must not have a conviction for a disqualifying offense. *See* 18 U.S.C. § 3632(d)(4)(D). If eligible, an inmate may earn ten days of credit for every thirty days of successful participation in EBRRs or PAs. *See* 18 U.S.C. § 3632(d)(4)(A). Additionally, and relevant here, eligible inmates who have been assessed at a minimum or low risk of recidivism, who maintain their low risk of recidivism over two consecutive assessments, may earn an additional five days of time credit for every thirty days of successful participation. *See id*.

On July 19, 2019, the System was released for use throughout the BOP in compliance with the timeline set in the FSA. *See Holt v. Warden,* 539 F. Supp. 3d 1005, 1010 (D.S.D. 2021). Thereafter, within 180 days, the BOP was to implement and complete an initial intake risk and needs assessment for each prisoner. 18 U.S.C. § 3621(h)(1)(A). On January 15, 2020, the BOP announced that all inmates had been screened using the System, known as the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"). *Holt*, 539 F. Supp. 3d at 1010. The implementation phase of the FSA, a two-year phase-in period for providing EBRRs and PAs, commenced after all inmates had been screened. 18 U.S.C. §§ 3621(h)(2)–(3). During the phase-in period, the BOP had until January 15, 2022, to provide EBRRs and PAs to all inmates. *Id*. at § 3621(h)(2).

On January 19, 2022, the BOP published and codified its "procedures regarding the earning and application of Time Credits as authorized by the First Step Act of 2018" (the "January Final Rule"). *See* FSA Time Credits, p.1, 87 Fed. Reg. 12, 2705 (January 19, 2022) (codified at 28 C.F.R. pt. 523).

On November 18, 2022, the BOP published BOP Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d). *See* BOP Program Statement 5410.01. This Program Statement implements the January Final Rule, and further clarifies the BOPs procedures for awarding and applying ETCs under the FSA. *Id.*

The crux of Plaintiff's Complaint, as well as his previous lawsuits, is his contention that the FSA required the BOP to apply his earned FSA credits to his sentence and transfer him to community corrections no later than January 19, 2022, the date on which the BOP published its procedures for instituting the earning and application of ETCs. ECF No. 1 at 6; *see also Cochran v. Director of the Bureau of Prisons, et al.*, Civil Action No. CCB-22-2061 (D. Md.) and *Cochran v. Earwin*, Civil Action No. GLR-22-173 (D. Md. 2022).

### B. Constitutional Claims

In his Complaint, Plaintiff alleges that he was held past his required release date in violation of his Fifth and Eighth Amendment rights. ECF No. 1. Defendants argue that these constitutional claims against the United States are barred by the doctrine of sovereign immunity. ECF No. 17-1 at 16-17. Furthermore, Defendants argue that Plaintiff's claim of "over-detention" is not cognizable under *Bivens*. *Id.* at 17.

In his opposition response, Plaintiff states that he brings the constitutional claims only "in support" of his intentional infliction of emotional distress tort claim under the FTCA. ECF No. 20 at 2. Plaintiff specifically states that the United States is "only a Defendant in this matter as it relates to Plaintiff's claims brought under the FTCA, not the Plaintiff's constitutional claims." *Id.* at 2, 4. As Plaintiff clearly does not intend to bring a constitutional claim against the United States, any such claim is dismissed.

9

As to the individual Defendants, Plaintiff argues that Defendants "fail[] to address, challenge, or oppose, the Plaintiff's Constitutional Claims of 'Denial of Liberty Without Due Process' and 'Cruel and Unusual Punishment'" when they argued that Plaintiff's "over-detention" claim is not cognizable under *Bivens*; therefore, his claim should proceed. ECF No. 20 at 8-9. Although unclear, it appears that Plaintiff contends that Defendants waived any defense to his constitutional claims against the individual defendants because they did not specifically address the various constitutional rights that he alleged to have been violated by his "over-detention." Plaintiff's interpretation of Defendants' argument is not accurate. Defendants argue that Plaintiff's claim of "over-detention" in violation of his constitutional rights does not fall within the extremely limited types of cases permitted by *Bivens* As explained below, Plaintiff's claim that he was "over-detained" is not cognizable under *Bivens*, regardless of which specific constitutional rights are considered.

*Bivens* established a cause of action under the Constitution of the United States against federal officials for violating federal constitutional rights. But in the intervening years, the Supreme Court has significantly limited the types of causes of action that may be brought. *See Ziglar v. Abbasi*, 582 U.S. 120, 136 (2017). In *Abbasi*, the Supreme Court clarified that "a *Bivens* remedy will not be available if there are 'special factors counseling hesitation in the absence of affirmative action by Congress.'" *Id.* (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)). The *Abbasi* Court specified three cases in which a *Bivens* remedy has been found available: *Bivens*, 403 U.S. 388, 389-98 (1971) (remedy available for Fourth Amendment claim against federal agents after they handcuffed a man in his own home without a warrant); *Davis v. Passman*, 442 U.S. 228, 248-49 (1979) (recognizing *Bivens* remedy in suit against a Congressman by former employee who claimed sex discrimination in violation of the equal protection clause of the Fifth

10

Amendment); and *Carlson v. Green*, 446 U.S. 14, 19 (1980) (recognizing damages remedy under *Bivens* for Eighth Amendment violation by federal jailers when they refused to treat a prisoner-plaintiff's asthma). The *Abbasi* Court then formulated a two-step inquiry for determining if a *Bivens* remedy is available, requiring that courts first look to whether "the statutory or other legal mandate under which the officer[s] were operating" differs "'in [any] meaningful way' from the three cases in which the Court has recognized a *Bivens* remedy." *Id*. at 523 (quoting *Abassi*, 582 U.S at 139). If there is no meaningful contextual difference, then a *Bivens* remedy remains available. *Id*. If the context is new, however, this Court is required to consider whether there are "special factors counseling hesitation in the absence of affirmative action by Congress." *Abassi*, 582 U.S. at 136. In other words, the inquiry is *who* should decide that a damages remedy should exist – the legislative branch or the judiciary. *Id*. Importantly, the Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants," *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001), finding that the creation of damages remedies should be left to Congress.

In addressing the first part of the inquiry, "[a] case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Abbasi*, 582 U.S. at 139–40. Here, Plaintiff's "over-detention" claim is entirely dissimilar from the three recognized *Bivens* causes of action. Therefore, it is left for this Court to

11

determine whether "there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert v. Boule*, 596 U.S. 482, 491-92 (2022).

The Fourth Circuit has "declined to extend *Bivens* in a number of cases" because of "the same special factors [that] counseled against extending *Bivens*: (1) Congress's decision to omit an individual capacity damages remedy from the Prison Litigation Reform Act (PLRA); (2) the existence of alternative remedies; and (3) the potential for systemwide consequences." *Fields v. Fed. Bureau of Prisons*, 109 F.4th 264, 270 (4th Cir. 2024). The Fourth Circuit noted in *Fields* that:

> Our prior cases pointed to the BOP's Administrative Remedy Program (ARP) as another factor counseling against extending *Bivens*. We have said that the existence of an alternative remedial scheme prevents us from extending *Bivens*, even when that scheme does "not provide complete relief." *Tate v. Harmon*, 54 F.4th 839, 847 (4th Cir. 2022) (quoting *Egbert*, 142 S.Ct. 1793). That is true even when the alternate remedies cannot provide a form of relief that would be available in court. *See Earle v. Shreves*, 990 F.3d 774, 777 (4th Cir. 2021) ("While these alternate remedies do not permit an award of money damages, they nonetheless offer the possibility of meaningful relief and therefore remain relevant to our analysis."); *Schweiker v. Chilicky*, 487 U.S. 412, 425, (1988) (declining to imply a *Bivens* remedy for due process claims arising from the denial of Social Security benefits despite the unavailability of compensatory damages under an alternate remedial scheme). Finally, we have noted that "[t]he potential unavailability of a remedy in a particular circumstance does not warrant supplementing that scheme." *Bulger[v. Hurwitz]*, 62 F.4th [127,] 141 [(4th Cir. 2023)](declining to extend *Bivens* in part because of the ARP despite the fact that the inmate "did not have enough time to avail himself of the remedies offered by the ARP before his transfer to [a different facility] or before he was killed").

*Fields*, 109 F.4th at 271.

The Fourth Circuit expressly cautioned against extending *Bivens* in prison contexts, noting that a claim with a "potential for systemwide consequences … [a]llowing 'broad-based, systemic claim[s] against an array of federal officials,' … would risk 'expand[ing] prison officials' liability from previous *Bivens* actions to systemic levels, potentially affecting not only the scope of their

12

responsibilities and duties but also their administrative and economic decisions." *Fields*, 109 F.4th at 271 (quoting *Tate v. Harmon*, 54 F.4th 839, 846 (4th Cir. 2022)). "The operative question is 'whether a court is competent to authorize a damages action not just against' the individual officers in the case at hand, but against all similarly situated officials generally." *Mays v. Smith*, 70 F.4th 198, 206 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 1008 (2024), (quoting *Egbert*, 142 S. Ct. at 1806). In cases such as *Mays*, where the claim would result in "increased litigation over the myriad decisions made every day regarding inmate discipline, transfer, and employment across the entire BOP system," the Court has found that such "'systemwide' consequences 'foreclose relief.'" *Mays* at 206 (quoting *Egbert*, 142 S.Ct. at 1803-04). Plaintiff's claim of "over-detention," particularly in the context of the complicated and lengthy process of implementing the FSA, would certainly have systemwide implications. Therefore, recognizing such a claim under *Bivens* is not appropriate, when Congress provided no damages remedies in the FSA.[4] Plaintiff's constitutional claims will be dismissed.

### C. FTCA Claims

Plaintiff brings his intentional infliction of emotional distress claim pursuant to the FTCA, which provides a limited waiver of sovereign immunity for certain tort actions. *See* 28 U.S.C. §§ 1346(b), 2674. Under the FTCA, the United States is liable, as a private person, for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting under the scope of his office or employment[.]" *Id.* § 1346(b)(1). As a waiver of sovereign immunity, the FTCA is to be narrowly construed and

---

[4] At least two other district courts have found that claims such as Plaintiff's are not cognizable under *Bivens*. *See, e.g.*, *Shade v. Bureau of Prisons*, 2024 WL 4603246, *3 (S.D.W.V. Oct. 29, 2024); *Cook v. Peters*, 2024 WL 778134, *3 (N.D. Ohio Feb. 26, 2024).

13

is not to be extended by implication. *See United States v. Nordic Vill., Inc.,* 503 U.S. 30, 34 (1992). A plaintiff also must exhaust administrative remedies before filing suit, or the case is subject to dismissal for lack of subject matter jurisdiction. 28 U.S.C. § 2675(a); *see McNeil v. United States*, 508 U.S. 106, 112 (1993); *see also Plyler v. United States*, 900 F.2d 41, 42 (4th Cir. 1990).[5]

Plaintiff alleges that Defendants are responsible for the intentional infliction of emotional distress during the time he was "inappropriately and unlawfully over-detained" at FCI-Cumberland in violation of his constitutional rights. ECF No. 1. Specifically, he alleges that each Defendant "has committed, intentionally and inappropriately ignored, or acquiesced to, the serious injury to which the Plaintiff was subjected," because his illegal detention "continued beyond them having been properly and formally informed." *Id*. at 3.

First, the individual Defendants argue that the FTCA claim must be dismissed against them, because the FTCA only provides for suits against the United States and they were acting in the scope of their employment. ECF No. 17-1 at 25. In support, Defendants present the Certification of Erek L. Barron, United States Attorney for the District of Maryland, who certifies that the individual Defendants were acting within the scope of their employment as federal government employees with regard to the allegations in the Complaint. ECF No. 17-3. Furthermore, Plaintiff acknowledges that the individual Defendants are not subject to suit under the FTCA. ECF No. 20 at 5. Thus, the FTCA claims against the individual Defendants will be dismissed, leaving the United States as the sole Defendant.

In order to state a claim for intentional infliction of emotional distress, Plaintiff must plead and provide supporting facts that: (1) the conduct is intentional or reckless; (2) the conduct is

---

[5] Plaintiff alleges that he exhausted his administrative remedies as required by the FTCA, and Defendants do not refute that he has done so. ECF No. 1 at 2; ECF No. 17-1.

extreme and outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress is severe. *Williams v. Wicomico County Board of Education*, 836 F. Supp. 2d 387, 398 (citing *K & K Mgmt., Inc. v. Lee*, 557 A.2d 965, 973 (1989)); *see also Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977).

The Appellate Court of Maryland has indicated that the conduct for this tort must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harris*, 380 A.2d at 614. Pleading a claim for intentional infliction of emotional distress is a rigorous and difficult burden to satisfy. *Ky. Fried Chicken Nat'l Mgmt. v. Weathersby*, 326 Md. 663, 670 (1992). Recovery is limited to the most extreme and unusual circumstances. *Hrehorovich v. Harbor Hosp. Ctr., Inc.*, 614 A.2d 1021, 1034 (Md. App. 2010).

Defendants argue that Plaintiff cannot establish that the United States is liable for intentional infliction of emotional distress. ECF No. 17-1 at 26-30. First, and most importantly, Defendants argue that Plaintiff was not held beyond his mandatory release date pursuant to the FSA or in violation of his constitutional rights. *Id*. Specifically, Defendants argue that Plaintiff was ineligible for the application of the credits and transfer to prerelease custody on January 19, 2022, because he was assigned a medium recidivism risk PATTERN score until it was reduced to low on June 27, 2022; therefore, he was ineligible for application of FSA credits until that time. *Id*. Documents submitted by Defendants confirm that Plaintiff's recidivism level was assessed as medium on November 24, 2021, and April 27, 2022, and was not reduced to low until June 27, 2022. ECF Nos. 27-3, 27-5, and 27-7. Plaintiff argues that his PATTERN score was low or minimum during this time, ECF No. 20 at 12-13, but he presents no evidence in support of this contention, nor does he present anything that refutes Defendants' documentation showing his

PATTERN score placed him at a medium risk of recidivism. Thus, to the extent that Defendants ignored Plaintiff's repeated pleas for release as alleged, they were not intentionally inflicting emotional distress upon him when they did not release him; rather, they were complying with the FSA by not applying Plaintiff's credits while records showed him to be assessed at a medium risk of recidivism and ineligible for application of credits.

To the extent that Plaintiff argues that the Warden approved his application for transfer to community corrections in December of 2021, ECF Nos. 20 at 6 and 28 at 4-5, therefore, he should have been transferred at the latest on January 22, 2022, this argument is also unavailing. On December 16, 2021, Warden Weber approved a recommendation that Plaintiff be transferred to community corrections on August 4, 2022. ECF No. 27-6. The approval does not indicate that it was intended to override the FSA's requirement that credits not be applied for purposes of early transfer to community corrections unless and until an inmate has a low or minimum recidivism score. There is nothing in the Warden's December, 16, 2021 referral to indicate that Plaintiff's PATTERN score changed on that date. *Id*.

Furthermore, nothing suggests any Defendant was intentional, reckless, extreme, or outrageous when they failed to apply Plaintiff's FSA credits upon his demands. Plaintiff himself suggests that Defendants have a "total lack of understanding of the application of Pattern Risk Assessment Scoring System" and "total confusion on the part of the BOP, and the Defendant, when it comes to the FSA and applications of FSA Earned Time Credits to the Plaintiff." ECF No. 28 at 5. Even when viewed in the light most favorable to Plaintiff, there is no evidence that Defendants intentionally inflicted emotional distress by failing to release him; Defendants were, at worst, confused about the new and changing laws and regulations with respect to the FSA. Therefore, the United States is entitled to summary judgment on this claim.

**Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, ECF No. 17, shall be granted. Plaintiff's constitutional claims are dismissed, as are the FTCA claims against the individual Defendants. Summary judgment is granted in favor of the United States and against Plaintiff on the FTCA claim. Plaintiff's Motions to Deny Defendants' Motion to Dismiss and Request for Sanctions, ECF No. 26, and Motion in Opposition to Defendants' Motion to Extend Time to Comply, ECF No. 29, are denied.

A separate order follows.

  August 21, 2025                               /s/
Date                                      Stephanie A. Gallagher
                                          United States District Judge